**DAL-WORTH SHIPPERS ASSOCIA-TION, INC., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 9148.**

United States District Court
N. D. Texas,
Dallas Division.

Sept. 18, 1962.

Joe G. Fender, Houston, Tex., and J. Manuel Hoppenstein, Dallas, Tex., for Dal-Worth Shippers Association, Inc.

Barefoot Sanders, U. S. Dist. Atty., Martha Jo Stroud, Ass't U. S. Atty., and William Ravkind, Dept. of Justice, Dallas, Tex., for the United States.

HUGHES, District Judge.

This is an action to recover $10,524.30 of federal transportation taxes paid by the plaintiff to the defendant for the period beginning October 1, 1954 and ending July 31, 1958.

Plaintiff filed excise tax returns reporting liability for transportation of property taxes assessed on May 23, 1958 and September 5, 1958, respectively, for periods and in amounts as follows:

| Date Filed or Scheduled | Period | Amount |
|---|---|---|
| 4–28–58 | 10–1–54 thru 12–31–57 | $ 8,904.48 |
| 5–1–28 | 1–1–58 thru 3–31–58 | 751.37 |
| 8–6–58 | 4–1–58 thru 6–30–58 | 763.41 |
| 10–31–58 | 1–1–58 thru 9–30–58 | 105.04 |
| | TOTAL | $10,524.30 |

This liability and addition liability for assessed interest and penalty with respect thereto were satisfied in full by payments and credits applied as follows:

| Date | Amount |
|---|---|
| 5–28–58 | $2,226.12 |
| 7–25–58 | 2,226.12 |
| 10–15–58 | 4,452.24 |
| | $8,904.48 |

| Date | | Amount | |
|---|---|---|---|
| 10–23–58 | (interest) | 129.50 | |
| | (total) | | $ 9,033.98 |
| 5–1–58 | (full paid return) | | 751.37 |
| 8–6–58 | | 763.41 | |
| 9–12–58 | (17.16 Penalty 0.34 interest) | | |
| | TOTAL | | 780.91 |
| 10–31–58 | (full paid return) | | 105.04 |
| | Total Payments | | $10,671.30 |

On March 8, 1960, plaintiff filed timely claims for refund for periods and amounts as follows:

| Period | Amount |
|---|---|
| 10–1–54 thru 12–31–54 | $ 518.02 |
| 1–1–55 thru 12–31–55 | 2,699.55 |
| 1–1–56 thru 12–31–56 | 2,783.84 |
| 1–1–57 thru 12–31–57 | 2,908.07 |
| 1–1–58 thru 7–31–58 | 1,619.82 |
| Total | $10,524.30 |

Each of plaintiff's claims for refund was disallowed in full by separate statutory notices under date of August 18, 1960. The instant action for recovery of the sum of $10,524.30, plus statutory interest was timely instituted on May 3, 1962.

Plaintiff is a corporation which was incorporated on the 12th day of February, 1949. It was organized as a membership organization under the sponsorship of a group of merchants in Dallas for the purpose of reducing the cost of their transportation from their principal sources of supply. At a later date the privilege of membership was extended to merchants in the Fort Worth area.

The Association does not issue shares of stock. Membership is evidenced by a letter of acceptance of a member's application. Services of the Association are rendered for members only. There are about two hundred members at this time. Control of the Association is exercised by a Board of Directors consisting of twenty-one persons, representing about ten per cent of the active membership, and an Executive Committee consisting of seven members. Under present Bylaws the maximum membership of the Board of Directors is twenty-five. A manager is employed who oversees the clerical work which constitutes the day-to-day operation of the Association. Bylaws permit admission of new members to the Association by majority vote either of the Board of Directors or the Executive Committee, although in normal practice a prospective member will be rejected or admitted by unanimous action. No members are solicited by the Association or any of its officers. The Directors all serve without pay.

The Association arranges the transportation of freight for its members from their vendors in New York, Philadelphia, Boston, Chicago and surrounding areas to Dallas and Fort Worth, Texas. Almost all of the present members are located either at Dallas or Fort Worth and

their freight is handled on a collect basis. About one-half dozen vendors at origin, however, have been permitted to participate to the extent that their freight is prepaid.

Shipments for Association members will vary in size from extremes of less than one pound to a maximum of twenty thousand. Typically they will range in weight from twenty-five to a hundred fifty pounds.

Through the efforts of the Association the members' individual small shipments are combined at origin and moved on a volume basis to obtain the benefit of railroad carload volume rates. These rates are substantially lower in cents per hundredweight than would apply to the individual movement of such shipments, and it is on this difference that the Association effects savings in the freight costs of its members.

Physical movement of freight for the members of the Association is commenced through the agency of a consolidator at the origin cities. A representative of the consolidator receives traffic for the Association on the docks of the initial rail carrier. When freight is so received by the consolidator, then immediately thereafter and as a part of one related transaction, he turns it over to the railroad which loads and commences the physical transportation. The Association shipments are moved by railroad as carload traffic.

The shipments received from vendors in the industrial area of the origin city, except at Chicago, are transported to the consolidator at the railroad docks in local drayage service. This drayage is arranged and the charge therefor and tax are paid for by the vendor. Shipments from outlying towns and cities in the origin areas are received from the over-the-road motor carriers from the point of shipment. These are received in the same fashion as local shipments, but on them the motor freight charge and tax is paid by the consolidator and billed by him to the Association. The drayage at Chicago is also handled·in this manner.

The consolidator maintains a record of receipts on all shipments and prepares a shipping order and a railroad bill of lading on each consolidated carload of traffic. This bill of lading is executed by an agent for the railroad. In the bill of lading the consolidator ordinarily is named as consignor and Dal-Worth as consignee. Some bills are consigned to "Dal-Worth, c/o Texas Express Company," which is drayage agent for the Association at Dallas and Fort Worth.

A detailed manifest of the contents of each railroad freight car is prepared by the consolidator and mailed to the Association. The railroad uses its copies of the original bill of lading and manifest for the preparation of a waybill to accompany the carload movement and as the basis for its subsequent bill of charges to the Association.

The rail cars may be loaded in straight carload quantities either to Dallas or Fort Worth, or they may be consigned to either one of those points with a stop-off for partial unloading at the other.

At destination the freight is delivered by the railroad to its own dock and warehouse facilities both at Dallas and Fort Worth. In Dallas the freight is unloaded by railroad employees over dock space within the railroad's exclusive possession. At Fort Worth the freight is unloaded by employees of Texas Delivery Service on space leased by it from the railroad company. At Dallas the freight is receipted from the railroad by Texas Express at the time of loading to its vehicles; at Fort Worth when the car unloading is complete. At Dallas and at Fort Worth the shipper may elect either to receive his goods in drayage service or to pick them up at the railroad's docks.

The charges of the Association are applied uniformly to all members, but vary as to individual shipments according to their contents and weight. Charges are fixed at a level which returns the cost and tax on the underlying transportation by rail and motor vehicle, consolidating charges, and overhead including

depreciation, rent, salaries, telephone, office, and any other cost. If at the end of a twelve-month operating period Association revenues exceed the expense, then pursuant to the Association bylaws the excess is prorated on the basis of tonnage and distributed back to the members. Refunds have never exceeded one per cent of revenues for any operating period, and have averaged one-half of one per cent.

The Association holds no certificate of convenience and necessity from the Interstate Commerce Commission, it publishes no tariff, and issues no bill of lading. It owns no equipment. It does not physically take possession of or handle the merchandise of its members at any time. The Association has paid the three per cent excise tax on all the charges of commercial carriers by rail and motor vehicle, including loading, unloading and drayage at destination and at Chicago, as well as for over-the-road service. No tax, however, is paid by the Association on the local drayage at origin except at Chicago, as above noted.

The following will illustrate operations from the standpoint of a member. Cullum and Boren sometimes orders boats from Grumman Corp., at Marathon, New York. The vendor, pursuant to instructions from Cullum and Boren, ships the boats collect to Dal-Worth, c/o U. S. Packing & Shipping Company at New York City, by Central New York Freightways, freight collect. The consolidator pays the motor freight charges from Marathon to New York including the transportation tax and bills that charge against the Association. The consolidator obtains a receipt for this shipment from the Pennsylvania Railroad which loads to a car-load basis and commences the transportation to Dallas, Texas. At Dallas the TP Railroad is the delivering rail carrier. It unloads, classifies and segregates the carload shipment on its dock space, releasing the shipment for local drayage to Texas Express Company. The Association invoices Cullum and Boren for the Association's total charges on the shipment.

By statutory definition, U.S.C.A. Title 49, Section 1002(a) (5), every freight forwarder—

(1) "* * * holds itself out to the general public

(2) "as a common carrier

(3) "to transport or provide transportation of property * * * for compensation * * *"

(4) "* * * assembles and consolidates or provides for assembling and consolidating shipments of such property * * *"

(5) "* * * assumes responsibility for the transportation of such property from point of receipt to point of destination, and

(6) "utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers" by rail, motor vehicle or water "subject to part I, II, or III of this Act."

Plaintiff operates on a non-profit basis under the exclusionary provisions of Title 49, Section 1002(c). It does not hold itself out to the public as a common carrier for compensation as distinguished from non-profit operation and assumes no responsibility for the through movement of freight.

Also, plaintiff differs from the freight forwarders in that plaintiff—

(a) holds no permit of any kind from the Interstate Commerce Commission as required of a freight forwarder by U.S.C.A. Title 49, Section 1010,

(b) files no tariffs with the I.C.C. as is required of the freight forwarder by Title 49, Section 1005,

(c) issues no through bill of lading as is required of freight forwarders by Title 49, Section 1013,

(d) is generally not subject to the regulatory provisions of the Interstate Commerce Act including the keeping of accounts, etc.

Further, Dal-Worth—

(e) confines its activities primarily to small package shipments as

indicated by the stipulations as distinguished from volume traffic and never furnishes truck trailers for railroad flatcar movement or utilizes any of the railroad trailer or flatcar services in so-called "Piggyback operations" as do the major freight forwarders,

(f) operates subject to the direction of its members for whom all freight is handled, whereas forwarders when incorporated operate subject to direction of their stockholders who normally are not shippers of freight at all,

(g) finally, under the provisions of Section 4272 the freight forwarder pays no three per cent transportation tax on its underlying transportation, whereas Dal-Worth at all times prior to repeal of Sections 4271 and 4272 paid every penny of the three per cent transportation tax on all commercial transportation used in the service of its members.

Plaintiff does provide for assembling and consolidation of property. Plaintiff "utilizes, for the whole or any part of the transportation of such shipments the services of a carrier or carriers" * * by rail, motor vehicle or water * * * "subject to part I, II, or III, of this Act." Plaintiff also, if a member desires, provides for distribution of shipments to such member at the destination point.

## CONCLUSIONS OF LAW

1. Revenue Ruling 57–614 that organizations similar to Dal-Worth Shipper Association, Inc., were considered to be "a person engaged in the business of transporting property for hire" similar to a freight forwarder is entitled to weight.

2. To be in business and transporting property for hire it is only necessary that one be engaged in an independent enterprise whereby he receives goods at one point and provides substantially all equipment and services for carrying those goods to another point for delivery in return for overall compensation.

3. Dal-Worth Shippers Association, Inc., furnished substantially all the facilities and performed substantially all of the functions of a freight forwarder.

4. "Freight forwarders" or "similar persons" are expressly included within the provisions of Section 4272 of the Internal Revenue Code as being subject to the tax imposed by Section 4271.

5. The profit motive is not a necessary element of engaging in the business of transporting property for hire and Section 4272 of the Internal Revenue Code is broad enough to cover operations which do not involve a profit motive.

6. The construction placed on various statutes regulating interstate commerce are not determinative of tax statutes involved herein.

7. Dal-Worth Shippers Association, Inc., is subject to the provisions of Sections 4271 and 4272 of the Internal Revenue Code and the complaint should be dismissed.